IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 09 CR 840 |
| v. | ) | |
| | ) | Judge William J. Hibbler |
| | ) | |
| JOHN HEMPHILL | ) | |

**DEFENDANT'S POSITION PAPER AS TO SENTENCING FACTORS**

1. *Introduction.*

The indictment charges that, beginning *no later than 2008*, John Hemphill engaged in a scheme to defraud property owners through the auspices of the two corporations, United States Mortgage Release Corporation (USMRC) and the United States Caretakers Association (USRCA). Mr. Hemphill, who is a self-taught "paralegal research[er]," represented himself at trial. He admitted conducting various real estate transactions while asserting that he had the lawful authority to perform such acts. Specifically, he sought to present a public authority defense based on a self-styled concept, which he refers to as "federal receivership". Unfortunately for John, the Court rejected his proffered defense as a matter of law. Thereafter, reduced to presenting a defense based on lack of fraudulent intent, the contours of which he appears never fully to have grasped, Mr. Hemphill was convicted.

2. *Sentencing Post-Booker.*

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that then-mandatory federal sentencing guidelines violated the Sixth Amendment right to a jury trial. As a

1

remedy, the Court preserved the Guidelines, but rendered them advisory only. *Id*. at 264. *Booker* gave "renewed significance" to the numerous other sentencing factors listed in 18 United States Code §3553(a). *See United States v. Crosby*, 397 F.3d 103, 111 (2d Cir. 2005). §3553(a)'s governing principle is that the sentence imposed should be sufficient and "not greater than necessary."

3. *3553(a)(4): The Role of the Advisory Sentencing Guidelines.*

Although the Guidelines remain an important component of federal sentencing law, there is no "legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. at 350 (citing *Booker*). To the contrary,

> [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable.

*Gall*, 552 U.S. at 50. (footnote omitted).

Here, the government calculates an advisory guideline range of 46-57 months based on a total offense level of 19 and a criminal history category of IV.[1] Govt. Ver., p.8. Mr. Hemphill does not disagree with the government's calculation of the offense level, but believes that a sentence predicated upon it would result in a sentence greater than necessary. He also respectfully suggests that the correct criminal history category is III, not IV.

---

[1] Arrived at as follows: (1) Base offense level 7 for Count One; (2) ten additional levels "because the loss exceeded $120,000 but did not exceed $200,000"; (3) two additional levels because the offense involved a misrepresentation that Hemphill "was acting on behalf of a government agency." *Id*., p.7. The government is right that a separate calculation for Count Two would not change the offense level.

(A)   Objections to the Presentence Report (hereinafter PSR).

Mr. Hemphill objects to several of the probation officer's opinions concerning the guidelines, beginning with his opinion that the total offense level should be 25 rather than 19. Specifically, we object to the probation officer's assertion that the base offense level for Count One should be increased by *fourteen* levels for the loss, and would point out that the government itself argues that the loss only warrants an increase of ten levels.

The probation officer predicates his opinion on the "receipt" attached to the government's version and his gut reaction "crediting" Mrs. Iqbaluddin's version. PSR, pp. 13-14. However, this receipt was actually issued to Mrs. Iqbaluddin's *husband*. It's not clear from the record whether she was even present at the time, nor is it obvious that her account, which is summarized in an attachment in the government's version, is her independent account. What is obvious is that the government has throughly investigated these matters, but concludes the loss in this case only merits a ten level bump.

Of course, the government has the burden of proving the loss (*United States v. Schild*, 269 F.3d 1198, 1200 (10th Cir. 2001)), albeit by a preponderance. *United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006). The circumstances of this case, which include the fact that Mr. and Mrs. Iqbaluddin did not testify at the trial, suggest that the loss can't be determined with reasonable precision. Therefore, the government quite reasonably uses Hemphill's *gain* as an alternative way to calculate the loss, a methodology the guidelines recognize and approve. *See* U.S.S.G. §2B1.1(b)(1), cmt. n.3(B) (2009). Accordingly, the Court can and should adopt the government's loss calculation.

Next, Mr. Hemphill objects to the probation officer's further two-point assessment based on a mis-characterization of this offense conduct as being "especially complex and intricate, as compared with other property offenses *in which items are simply stolen or taken by mere dishonesty.*" PSR, p. 12, l. 366-371 (emphasis added). Although Mr. Hemphill's offense conduct undoubtedly involved greater planning than, say, acquiring property by picking someone's pocket or running a game of 3-card Monty, it was hardly "sophisticated" as compared with other schemes involving real estate fraud.

Basically, the government's evidence showed that John created and recorded fictitious deeds purporting to convey real estate to his corporations. The scheme needed little more than a word processor, a printer and the documents of incorporation. It was a far simpler scheme than the simplest mortgage fraud scheme.

It also was transparent. Hemphill's letters, replete with bad grammar, misspellings, and easily verifiable (or refuted) claims of ownership not only drew suspicion but proved his undoing. *See* PSR, p. 5, l. 83-85. Likewise, the filings with the Cook County's Recorder's Office were so obviously phoney that officials there would add a special disclaimer. Several surreptitious tape recordings reveal an unprofessional atmosphere, more of a clubhouse than a business. Finally, William Jones' wife immediately spotted Mr. Hemphill's badge, which he bought at a novelty shop, as a phoney.

The government makes no claim that Hemphill's criminal conduct was "sophisticated" since it obviously wasn't. Accordingly, we request the Court to reject the probation officer's 2-point enhancement for this reason, and to find, as estimated by the government in its official version, the total offense level to be 19.

Mr. Hemphill also objects to the probation officer's criminal history calculation[2], which assigns him 13 points, resulting in a criminal history category of VI. PSR, p. 26, l. 683-684. This calculation is wrong because several prior cases constitute relevant conduct, which can't be used to calculate criminal history.

As mentioned, the indictment alleges a scheme to defraud, beginning *no later than* 2008, and involving two corporate entities, USMRC and USRCA. Accordingly, the probation officer accepts the premise that the "*instant offense* involves the defendant's development and operation of a scheme to defraud," which included "incorporated entities named the United States Mortgage Release Corporation (USMRC) and the United States Caretakers Association (USRCA) (hereinafter collectively referred to as USRCA)." PSR, p.4, l. 66-69 (emphasis added). Further, according to the PSR, Mr. Hemphill formed these corporations around 2002. PSR, p. 40, l. 1040.

Despite the obvious connections between the "instant offense" and three prior state cases, the probation officer erroneously assigns them a total of seven criminal history points. First, he erroneously assigns three criminal history points to the two convictions[3] for theft by deception, which occurred in 2006. In these cases, Mr. Hemphill collected "rents" from apartment dwellers in two buildings, which he did not actually own, but, which, according to fictitious deeds on file with the Cook County Recorder of Deeds, had been conveyed to the USRCA. PSR, pp. 23-24.

---

[2] The government asserts that Mr. Hemphill's criminal history category is IV, but its calculation includes an upward adjustment for "recency," pursuant to a guideline 4A1.1(e), which has been eliminated. Govt. Ver., p.8. For obvious reasons, we'll restrict the discussion here to our objections to the probation officer's calculations.

[3] Since there was no intervening arrest, the probation officer assigns a total of three criminal history points to the two matters. *See* PSR, p. 24, l. 633-637.

The probation officer also erroneously assigns a total of four criminal history point[4]s to Mr. Hemphill's 2008 forgery conviction, involving his employment by USMRC. *Id.*, p. 25.

These assessments are based solely on the probation officer's interpretation of "Application Note 8, of §1B1.13, [which] precludes" treating prior cases as relevant conduct if "a prior sentence" was imposed. PSR, p.23, 618-619. However, he fails to take account of §IB1.3, Application Note 9, which modifies Application Note 8 to the extent that it permits judges to treat such prior cases as relevant conduct if they were part of a common scheme.

The Seventh Circuit's decision in *United States v. Garecht*, 183 F.3d 671 (7th Cir. 1999) illustrates the legal principle. In *Garecht*, a defendant pleaded guilty to participating in a conspiracy to distribute marijuana. He had a previous conviction for cocaine distribution. At sentencing he argued that the "instant offense" related to the same conspiracy that had resulted in his cocaine conviction. Based on Application Note 9, the court held that, despite the prior imposition of sentence in the cocaine case, this conviction couldn't be used to compute criminal history under §4A1.2 because the two offenses were part of a single conspiracy:

> [T]he conduct underlying both convictions occurred during the same time frame, relied on the same drug supplier, and involved a common purpose (the resale of controlled substances for profit). *These commonalities are more than sufficient to warrant a finding of relevant conduct*.

183 F.3d at 674 (emphasis added).

---

[4] As "the defendant was on probation in Cook County Illinois," in 2008, the PSR assigns him two points. *Id.*, p. 26, l. 681-682.

While the probation officer freely acknowledges that the "instant case" and the prior cases involved the same scheme[5], his calculation of Mr. Hemphill's criminal history score is wrong based on Application Note 9.

Based on a revised total of 6, rather than 13, criminal history points, Mr. Hemphill's properly calculated criminal history category should be III, The advisory sentencing range for a category III defendant whose offense level is 19 is 37-46 months.

Moreover, assuming the probation officer correctly calculated the criminal history category to be VI, which it is not, this circumstance would warrant a downward departure to category III or category IV. U.S.S.G. §4A1.3(b) contemplates such downward departures[6] where the defendant's criminal history substantially over-represents the seriousness of his criminal conduct.

The PSR assigns 4 criminal history points for a host of minor infractions, including a 1998 allegation that John got on a CTA bus without paying. Over roughly 18 months during 2002 and 2003, Hemphill was arrested no fewer than 4 times for driving without a valid driver's license, and the PSR assigns one criminal history point to each such arrest. Counting these misdemeanors seriously overstates Mr. Hemphill's criminal history. Indeed, if one simply discounts the misdemeanor cases, it reduces Hemphill's criminal history category from VI to IV, which is the category the government suggests in its official version.

---

[5] Thus, he concludes that Hemphill's Illinois conduct is "clearly similar to that alleged in the instant federal matter, " (PSR, p. 23, l) as was Hemphill's use of USMRC in Wisconsin in 2007. PSR, p.7, l.176 and p.11, l.305-310.

[6] The 7th Circuit has characterized the use of guidelines departures as being obsolete. *See United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005).

However, the circumstances of the CTA fare case also suggest that Mr. Hemphill is, in part, being penalized because he is indigent. We can safely conclude from the PSR that his driver's license was not suspended as the result of DUI, although it's unclear precisely what circumstances initially triggered the suspension. Generally, suspensions imposed by the Illinois Secretary of State arise due to financial circumstances, such as failing to pay license, sticker and registration fees, buy insurance, maintain emission equipment, etc. Once suspended, a license remains suspended until it is reinstated, a circumstance which means the driver will have to pay money in order to be in compliance, including a reinstatement fee. Until this occurs, every traffic stop results in the issuance of a new citation for driving without a license, and, in Mr. Hemphill's case, additional criminal history points.

For the same reason, certain felony convictions also appear to contribute to Mr. Hemphill's inflated criminal history score. For example, the PSR assigns him 2 points for a 2002 burglary conviction because he served 60 days in jail, *time considered served*. PSR, p. 19. Except where the underlying charge involves a violent felony, the designation "time considered served" implies an indigent defendant, who couldn't afford to post bond. As long as the undersigned attorney can recall, the common practice among state judges has been to designate pretrial time spent in custody as a part of a *probation* sentence. On the other hand, a sentence to so-called "straight" probation usually means the defendant was financially able to and did bond out for the duration.

Mr. Hemphill's 2008 probation sentence, after he had spent 270 days in pretrial custody, may be a case in point. To most defendants, probation is probation, which is, after all, preferable to prison, yet, for guidelines purposes, there is a significant one point difference between

8

"straight" probation and probation with a "time considered served" component. Without some good indication here that the sentencing courts intended to impose jail time as an actual condition of Hemphill's probation, he should not be penalized merely because he wasn't financially able to post bond.

4.   *Other Sentencing Factors.*

As mentioned, Mr. Hemphill is a self-taught "paralegal research[er]," (PSR, p 40) whose proffered defense to these charges amounted to an assertion of public authority, which the Court declined as a matter of law. Yet, it is hard to argue with the probation officer's characterization that John's "offense was unique" because he actually controlled and maintained the properties. PSR, p.10, l277. In fact, despite his fundamental misapprehension of applicable law, it appears Mr. Hemphill actually believed that he could seize and dispose of the properties. *See* PSR, p. 36, l. 886-887.

Apart from a lack of training and education, John's steadfast insistence that he is right in this regard, and that everyone else is wrong, might suggest some confused thinking. We acknowledge that the results of a 2008 court-ordered psychiatric examination failed to reveal any serious mental health issues (PSR, p. 38), however, it has been reported to the probation officer that John's brother is schizophrenic. PSR, p. 35, l. 853 *et seq.* Additionally, while John's mother describes him as being sweet, open-hearted and generous[7] (PSR, p. 36, l. 886-887), she also reported to the probation officer that John had received social security payments in the past following a mental health evaluation. PSR, p. 38, l. 968-969.

---

[7]   John has one son, Jonathan (PSR, p. 36, l. 911), whom he provides financially as able. *Id.*, p. 37, l. 917.

Further, according to the PSR, Mr. Hemphill's record suggests a history of substance abuse. PSR, p. 39, l. 998 *et seq*. At a minimum, if Mr. Hemphill is sentenced to prison, we respectfully request that the Court recommend to the BOP that he participate in its residential drug treatment program.

Finally, John is 41 years old. His age must be viewed as a mitigating factor, as the Sentencing Commission has found, "[r]ecidivism rates decline relatively consistently as age increases." <u>Recidivism and the "First Offender,"</u> United States Sentencing Commission Research Series on Recidivism, Release 2, p.12 (A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004).

5. *A Sentence of 3 Years or less Is Sufficient but Not Greater than Necessary.*

18 U.S.C. §3553(a) directs that the final sentence should be sufficient but not greater than necessary. Putting aside the BOP's residential drug treatment program, the sad truth is that imprisonment isn't going to provide John with adequate job training or needed treatment, at least to the same extent that better options can be implemented as part of his supervised release. *See, e.g.,* Bureau of Justice Statistics, Special Report: Mental Health Problems of Prison and Jail Inmates (NCJ 213600) (September 2006).[8]

Mr. Hemphill expects to be incarcerated, but respectfully suggests that a lengthy term of imprisonment will not serves his personal needs nor, more importantly, those of the community, which needs the contributions of productive citizens. A prison sentence of not more than 36 months, however, would strike a proper balance between the statutory goals of reasonable

---

[8] Nearly 45% of BOP inmates have a mental health problem, and more than 63% of inmates who are substance abusers have a mental health problem, yet, only about 15% receive professional mental health treatment.

punishment and individual rehabilitation.

                                              Respectfully submitted,

                                              s/ Gary Ravitz

                                              _____

                                              Gary Ravitz, attorney for
                                              John Hemphill


Ravitz & Palles, P.C.
203 N. La Salle Street, Ste.2100
Chicago, Illinois 60601
(312) 558-1689