IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
                    Plaintiff, )
                              )        Case No. 09-CR-840
       vs.                    )
                              )        Judge William J. Hibbler
                              )
JOHN HEMPHILL,                )
                    Defendant. )

DEFENDANT'S AMENDED POSITION PAPER AS TO PRE-SENTENCE REPORT

1.  The indictment charges that, beginning no later than 2008, John
Hemphill engaged in a scheme to defraud property owners through the auspices
of the two corporations, United States Mortgage Release Corporation (USMRC)
and the United States Receiver Caretakers Association (USRCA). Mr. Hemphill,
who is a self-taught "paralegal research[er]," represented himself at trial.
He admitted conducting various real estate transactions while asserting that
he had the lawful authority to perform such acts. Specifically, he sought to
present a public authority defense based on a self-styled concept, which he
refers to as "federal receivership". Unfortunately for John, the Court
rejected his proffered defense as a matter of law. Thereafter, reduced to
presenting a defense based on lack of fraudulent intent, the contours of which
he appears never fully to have grasped, Mr. Hemphill was convicted.

2.  The official stated that Iqbaluddins owned a gas station in Chicago
and Hemphill's brother, Anthony Allen, worked at the gas station as security.
He also stated that Anthony Allen introduced the Iqbaluddins to Hemphill in
February 2009 and that Hemphill told the Iqbaluddins was a federal employee,
which is not true.

3.  In February 2009, Hemphill introduced himself as a Receiver under

state jurisdiction and told the Iqbaluddins that he would pay off their debts on the property if they sold Hemphill the property. The Iqbaluddins sold the defendant the property, then asked to buy it back weeks later.

4.  The defendant presented a receipt that was for the purchase of the gas station, not a modification of the mortgage contract. The receipt stated the amount payed and the amount owed for the gas station. The mere fact that the owner signed it over to the Receivership gives the defendant the right to sell assets to settle the encumbrance on the property under conveyed right to ownership act, also termed legal act of transfer. Even as the previous owner, if he or she wants to rent or buy back the property, the company that is handling the sale has the right to collect rents or payments of the mortgage to satisfy the debt.

5.  The mere fact that the mortgage that was on the property located at 300 West Garfield Blvd. was "assigned" to USRCA from Bank of America, demonstrates that they transferred their rights to the mortgage which gave the defendant authority over the mortgage payments or to liquidate the debtor's assets for payments to the creditors.

6.  In July 2009, the defendant told Mr. Abul Iqbaluddin that the company was going federal and started the process of becoming just that by placing everything in federal jurisdiction. A look at any of the documents will show that "U.S. government" or "federal" was not on any documents until August of 2009. And the receivership only had civil badges, not federal.

7.  To further slander the defendant, the under cover officer stated the offense began in 2008. But Mr. Hemphill didn't start until January of 2009. That is just another way of getting a guilty verdict, by claiming that on or about 2008, John Hemphill created and recorded fraudulent deeds without the

knowledge or consent of the lawful title holder of the properties. That is simply not true. Mr. Hemphill got the title holder to sign a bond agreement just like the one that is attached to the motion. Therefore, the defendant had legal standing to have authority of rights, see "bonding agreement".

CONCLUSION

8.   Mr. Hemphill allowed a letter to be mailed out without consent, under his authority that could of caused harm, but the letter never caused harm. He never stated that he was federal on the letter but only that he was UNRCA and stated that the U.S. government had ownership as well. The undercover officer opened the black bag that showed the defendant's identity was federal and possession of a badge that showed the defendant was with the U.S. government. Mr. Hemphill didn't flash the ID and badge but rather was only starting to be with the U.S. government. The defendant was only going by 5 U.S.C. $\|$ 306, page 63, 1115 of title 31 that he thought gave him authority to act as a government receiving officer after the company had its permit, license, certificate and charter in good standing that he never fully grasped until the court explained it.

9.   Mr. Hemphill only went by these directions and may not have fully understood the process of being a federal agency. Mr. Hemphill's intention was not to harm anyone. Nor to pretend to be what he was trying to be. This was only a mistake and with the help from the court was corrected. The defendant has registered with the federal Registration Congress and Office of Management and Budgeting, also called the civic service and registered as a statuary agency.

10.   We hope the court will strike the government's request for judicial notice on the defendant's finding of the following provisions that Patrick J.

Fitzgerald, United States Attorney for the Northern District of Illinois, respectfully requested that the Federal Rules of Evidence didn't exist, see Attached Documents.

11. Lastly, the calculation for loss is incorrect. The total amount of possessions from Abul Iqballuddin was $32,500.00 as shown by the receipts. For Jones the amount of intended loss was $26,410.00, there is no receipt, or money orders, contracts and the construction payment is not shown. As the under cover officer stated, a receipt is provided from the defendant for every transaction.

12. Therefore, the total loss should only show $59,410.00. This would make the base offense level 7, plus 13 levels for the financial loss for a total of 20 with a criminal history of category IV, equals 24-30 months and a fine for an individual ranging from 60 to 100 thousand dollars unless the government can demonstrate otherwise. The burden of proof is on the government.

13. So we hope that the court will have mercy on the defendant on his plea for forgiveness and grant his request for time considered served and a possible fine for the inconvienence.

Respectfully submitted,

_(Pro Se)_

John Hemphill with
Gary Ravitz, stand-by counsel

United States v. Feeny, Dist. LEXIS 20752 (S.D.NY. 2002) - $75,000, 3 yrs. probation (guidelines 12-18 months)

United States v. Scuteri, Dist. LEXIS 20749 (S.D.NY. 2002) - $2.5 Million, 21 months sentence

United States v. Resnick - $10 Million, 42 months sentence

United States v. Demessi - $4.7 Million, 60 months sentence

United States v. Shith - $13 Million, 60 months sentence

United States v. Causey - $1 Billion, 66 months sentence

United States v. Ziegler - $826 Million, 60 months sentence

United States v. Turney (S.D.NY. 2002) - $480,000, 15 months sentence

United States v. Sharkey - $79 Million, 30 days & $10,000 fine

United States v. Rueb - $560,000, 27-33 months sentence

United States v. Chavrat - $1.1 Million, 6 months sentence

COMPARATIVE FRAUD CASES

United States v. Chavrat, Dist. LEXIS 20751 (S.D.NY. 2002) – $1.1 Million, 6 months sentence (guidelines 21-27 months)

United States v. Forbes – W.L.141952 (D.Conn. 2007) – $14 Billion, 120 months sentence

United States v. Adelson, 441 F.Supp.2d 506 (S.D.N.Y. 2006) – $100 Million, 42 months sentence (offense level 46)

United States v. Cushing, 99 Fed. Appx. 269 (2nd Cir. 2004) – $24 Million, 97 months sentence

United States v. Wolf, U.S.App. LEXIS 12935 (7th Cir. 2010) – $8.5 to $9 Million, 48 months sentence

United States v. Parris, 573 F.Supp.2d 743 (E.D.N.Y. 2008) – $4.6 Million, 60 month sentence

United States v. Black, et al., 530 F.3d 596 (7th Cir. 2008) – $5.5 Million, 78 months sentence, Atkinson 24 months sentence, Kepnis 6 months sentence

United States v. Watt, Dist. LEXIS 41070 (Dist. of Mass. 2010) – $171.5 Million ($40 Million credit card fraud), 24 months sentence (offense level 43)

United States v. Trupin, 475 F.3d 71 (2nd Cir. 2007) – $6 Million, 7 months sentence

United States v. Olis, 450 F.3d 583 (5th Cir. 2006) – $79 Million, 72 months sentence

United States v. Betts, Dist. LEXIS 20753 (S.D.NY. 2002) – $1.3 Million, 366 days (guidelines 30-37 months)

# E. INSTRUMENTALITIES

## 1. Introduction

Government entities have a unique federal tax situation. The federal government does not tax the "government" per se - no provision of the Code imposes such a tax. Moreover, under the doctrine of intergovernmental tax immunity, some activities of state and local governments may not constitutionally be taxed by the federal government; and common sense (if nothing else) dictates that the federal government not tax itself.

By and large, taxation of state and local governments themselves presents few difficulties. While there is usually no question as to their taxation, all levels of government must confront federal tax questions in numerous peripheral contexts. Is income of government employees subject to employment taxes? May donors to the government deduct their contributions? How will the government grantee be treated if it wishes to seek foundation funding? Must government entities file returns?

Where a government entity is not patently a "governmental unit," these questions are complicated by the need to determine if the entity is entitled to claim that status for a particular purpose. Where the entity is not a governmental unit, the basic taxation issue is answered differently: the entity is subject to tax unless it can claim exemption under the Code. A government entity may also voluntarily seek an exemption determination, so it can receive the tax and non-tax benefits available to exempt organizations. Tax exemption, however, may carry obligations as well as benefits, which the government entity assumes by voluntarily seeking exempt status.

For many years, issues relating to the exempt status of "instrumentalities" have been within the jurisdiction of the National Office. Many government entities are unaware of or do not understand the tax consequences of their activities. Similarly, their unique tax situation is often not familiar to interested third parties, such as foundations. Divisions of jurisdiction within the Service make it difficult for these entities to clarify their status. Moreover, cases involving these entities tend to engender a high degree of interest from public officials.

Thus, while technical issues arising in "instrumentality" cases are usually not difficult, they arise in a unique context, and must be treated accordingly. One must be familiar with the tax and other contexts in which these entities exist, and be able to offer them, where appropriate, alternatives to the status they seek. In addition, these

cases should be handled with the understanding that however the particular issue is resolved, it is unlikely the entity will be taxed.

This chapter will discuss the federal tax status of state and local government entities. Part 2 will define terms used in the Code to provide special treatment for government entities. Part 3 provides an overview of the federal tax context of government entities, and Part 4 discusses their exemption under IRC 501(c), and related issues.

## 2. Government Entities - Definitions

The Internal Revenue Manual requires referral to the National Office of applications for exempt status submitted by "instrumentalities of States and political subdivisions." IRM 7664.31. "Instrumentalities" there denotes entities closely affiliated - generally by government ownership or control - with state and local governments.

The term also has a technical meaning (discussed below), as do the other terms used in this chapter. The definitions below apply throughout this chapter, which uses the term "government entities" to refer generally to entities closely affiliated with state and local governments.

In considering particular provisions of the Code relating to government entities, it is important to note the specific term used, and apply the appropriate definition. While categories defined for different purposes frequently overlap, they are not always identical.

### a. "Governmental Unit"

A "governmental unit" generally includes a state; a possession of the United States; a "political subdivision" of a state or United States possession; the United States; or the District of Columbia. See, e.g., IRC 170(c)(1). Foreign governmental units are generally excluded, and will not be discussed.

Status of Indian Tribal Governments. Before 1983, Indian tribal governments were not considered state or local governments under the Code. Although tribal governments themselves were not subject to tax, Rev. Rul. 67-284, 1967-2 C.B. 55, the favorable consequences available to private parties entering into transactions with state governments did not apply to similar transactions with Indian tribal governments. See S. Rep. No. 97-646, 97th Cong., 1st Sess. 11 (Oct. 1, 1982). For

example, G.C.M. 34972 (Aug. 2, 1972) concluded a bequest to an Indian tribe could not be deducted for estate tax purposes under IRC 2055(a)(1).

In 1983, Congress sought to equalize this treatment by enacting IRC 7701(a)(10) and 7871. Under IRC 7701(a)(10), some Indian entities are treated as states or political subdivisions for purposes specified in IRC 7871. To qualify for treatment as a state, the entity must be an "Indian tribal government," which is the governing body of any tribe, band, community, village, or group of Indians or Alaska Natives, which has been determined by the Service, after consulting with the Secretary of the Interior, to exercise governmental functions. A list of qualifying Indian tribal governments is published in Rev. Proc. 83-87, 1983-2 C.B. 606; a list of qualifying "political subdivisions" of Indian tribal governments is published in Rev. Proc. 84-46, 1984-1 C.B. 541. Unlisted entities may request a ruling from the Associate Chief Counsel (Technical), following the guidelines in Rev. Proc. 84-37, 1984-1 C.B. 513.

The purposes for which qualifying Indian entities are treated as states or political subdivisions include: deductibility of charitable contributions to, taxes paid to, and contributions for lobbying the entity; special fuels tax, manufacturers excise taxes, communications excise tax, and highway use tax; application of unrelated business income tax; public school employees' ability to participate in tax-sheltered annuity plans (IRC 403(b)); and treatment of discount obligations it issues (IRC 454(b)). Subject to additional restrictions, interest on Indian tribal government obligations may be excluded from income by the recipient (IRC 103).

Political Subdivisions. The definition of "political subdivision" in Reg. 1.103-1(b) is used to define that term for numerous purposes under the Code. Reg. 1.103-1(b) defines a "political subdivision" as either a municipal corporation, or a division of government that has been delegated the right to exercise part of the government's sovereign power.

There are three generally acknowledged sovereign powers: the power to tax, the power of eminent domain, and the police power. An entity is a "political subdivision" only if it has a **substantial** sovereign power. It need not have all three sovereign powers, but possessing only an insubstantial amount of any or all of the sovereign powers is insufficient. See, e.g., Rev. Rul. 77-165, 1977-1 C.B. 21.

**Example (1)**: Bridge, airport, turnpike, port, and similar authorities created by state law and designated as public corporations, which

finance, construct, maintain, and operate public transportation facilities, are generally considered political subdivisions.

**Example (2):** M is a rapid transit authority created by state law. M sets rates, determines transit routes, and enforces its security regulations by maintaining a security force. Participating local governments may exercise powers of taxation and eminent domain on M's behalf. Although M cannot itself exercise substantial powers of taxation and eminent domain, the state legislature conferred the benefit of those powers on it by providing channels through which local governments can exercise them on M's behalf. Its powers over transit regulation are substantial police powers. Therefore, M is a political subdivision. Rev. Rul. 73-563, 1973-2 C.B. 24.

**Example (3):** N is a community development authority created under state law, at the petition of a private developer. N has the power to impose, collect, and receive service and user fees and other charges to cover costs of developing new communities. N can also enter into agreements with the county whereby the county may in its discretion acquire property by eminent domain on N's behalf. Under state law, N has no power or authority over zoning or subdivision regulation, fire or police protection, or water supply or sewage disposal unless services cannot be obtained from political subdivisions. N can adopt and enforce rules for using community facilities, but this does not invalidate the exercise of police power by a municipal corporation; the latter prevails in the event of conflict. N is not a political subdivision; its powers to impose fees and enter into agreements to acquire property by eminent domain are not substantial powers of taxation or eminent domain. Rev. Rul. 77-164, 1977-1 C.B. 20.

**Example (4):** O is a state university established by state law and supported by state appropriations. O has a police force to regulate traffic, motor vehicles, and speed limits on campus and to issue citations, impose fines, and arrest persons to detain them until city police arrive. The legislature may make limited and specific delegations of the state's power of eminent domain to allow O to acquire property needed in its operations. O is not a political subdivision. Its support from state appropriations does not give it a substantial power to tax, its limited police powers are not substantial, and its power to exercise eminent

domain on specific projects designated by the state is not a substantial power of eminent domain. Rev. Rul. 77-165, 1977-1 C.B. 21.

**Example (5):** P is a soil conservation district created under state law. The law authorizes P to adopt land use ordinances, enforce those ordinances, and levy taxes or make assessments on tracts of land the ordinances benefit. P is a political subdivision. Rev. Rul. 59-373, 1959-2 C.B. 37.

b. "Instrumentality"

Whether an entity is an "instrumentality" of a governmental unit is determined based on the following factors: (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether it performs its function on behalf of one or more states or political subdivisions; (3) whether private interests are involved, or whether states or political subdivisions have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) whether express or implied statutory or other authority is needed to create and/or use the entity; and (6) the degree of the organization's financial autonomy and the source of its operating expenses. Rev. Rul. 57-128, 1957-1 C.B. 311 (applying IRC 3121(b)(7) (FICA) and 3306(c)(7) (FUTA)).

**Example (1):** Q is an unincorporated association formed by state insurance officials to promote uniformity in insurance legislation and departmental rulings under state insurance laws, disseminate information to insurance supervisory officials, and protect policyholders' interests. Q's members are commissioners, directors, superintendents, or other officials charged by law with supervising the insurance business within their respective jurisdictions. It is governed and managed by officers selected from its members. Its income is derived principally from amounts assessed against insurance companies by state insurance departments, and by state contributions; a small part of its income is from selling data on security valuations. No part of its net profits inures to the benefit of private individuals. Applying the above factors, Q is an instrumentality. Rev. Rul. 57-128, supra.

**Example (2):** R is a soil and water conservation district formed as a private non-stock corporation by private individuals who completely control its operations. State law regulates R's operations and authorizes state officials to assist it in carrying out its purposes. These state

regulations are designed to ensure the integrity of such systems, but do not give state officials the power to operate them. Since R satisfies virtually none of the factors delineated above, it is not an instrumentality. Rev. Rul. 69-453, 1969-2 C.B. 182.

**Example (3)**: S, a municipal league, is a non-profit corporation formed to improve municipal government and promote the general welfare of cities in State A. A law does not provide specifically for political subdivisions to establish organizations like S, and S has the general powers of non-profit corporations. S is governed by a board of trustees whose members are officials of member cities. Its activities consist of publishing a magazine with articles on governmental matters; conducting conferences, surveys, and research projects on governmental subjects and publishing the results in pamphlets; sponsoring or participating in municipal law seminars; and appearing before legislative bodies. Its income is from membership dues, publications, advertising, and conference receipts. S is not an instrumentality of A or its political subdivisions. It has not been designated as such, and its control and supervision are not vested in public authorities since its board members and officers, although municipal officers, act as individuals and not as agents of their governments. Rev. Rul. 65-26, 1965-1 C.B. 444.

**Example (4)**: T was formed by agreement (adopted pursuant to state law) among three municipal corporations to provide recreational facilities for their residents and those of adjoining communities. T is governed by a board appointed by member municipalities; board members must reside in, but may not be members of a governing body of, a member municipality. The agreement provides for one of the members to issue bonds to finance the project at the commission's request; bonds must be authorized by municipal ordinance, and will not be general obligations of the city. Property acquired under the agreement will be owned by the municipalities in undivided interests proportional to their populations. If the project is terminated and its assets sold, funds remaining after paying T's debts will be distributed to member municipalities. Since substantially all the factors delineated above are met, T is an instrumentality. Rev. Rul. 65-196, 1965-2 C.B. 388.

c. Other Terms

Government entities are classified and defined in different ways under state law. For example, state law may designate an entity as a "political subdivision," a "body corporate and politic," an "agency," an "authority," a "board," a "commission," an "instrumentality," or similar term. These state law designations are not controlling for federal tax purposes, however; rather, an entity must meet the requirements of the particular tax provision.

## 3. Taxation of Government Entities - In General

### a. Income Taxation - Non-IRC 501 Exemptions and Exclusions

Most government entities will not be subject to federal income taxation, even if they are not recognized as exempt under IRC 501. The basis of "exemption" will depend on whether the entity is a "governmental unit" or a separate organization. The requirements differ for each.

No provision of the Code imposes a tax on the income of governmental units. It has therefore long been the position of the Service that income of governmental units is not generally subject to federal income taxation. The Code does, however, impose a tax on income of "corporations," a term that includes many entities which are not corporations under state law. Where a government entity is not an integral part of a governmental unit, the Service may tax its income unless that income is excluded or exempt from tax.

<u>States and political subdivisions</u>. Income of states and their political subdivisions is not subject to income tax under the Code. <u>See</u>, <u>e.g.</u>, G.C.M. 14407, VIX-1 C.B. 103 (1935). (Although this G.C.M. was superseded by Rev. Rul. 71-131, 1971-1 C.B. 28, its rationale remains valid.) Non-application of tax extends only to income derived from activities directly conducted by a state or subdivision (including any "integral part" of a state or subdivision); the nature of the activities (e.g., "proprietary" or "commercial" as opposed to "governmental") is irrelevant. Thus, in Rev. Rul. 71-131, 1971-1 C.B. 28, and Rev. Rul. 71-132, 1971-1 C.B. 29, the Service held the income of state-owned and operated liquor stores was not subject to tax.

<u>Exclusion under IRC 115</u>: If an entity is separate from (not an "integral part" of) the government, its income will be subject to tax unless an exclusion or exemption applies.

IRC 115(1) excludes from gross income, income (1) derived from any public utility or the exercise of any essential governmental function, and (2) accruing to a state or political subdivision (including the District of Columbia).

What activities involve exercise of an "essential governmental function" is generally decided on a case-by-case basis. Factors considered include whether the activity is one traditionally considered "governmental" (as opposed to private or proprietary), whether it involves the exercise of governmental (sovereign) powers, the extent of government control over the activity, and the extent of government financial interest in the activity. Qualifying activities may include public education; investment of public funds, Rev. Rul. 77-261, 1977-2 C.B. 45; operating a municipal insurance pool; operating a public hospital or other public health facilities; or providing public recreation facilities.

Income must be <u>derived from</u> a qualifying activity; it is not enough that it be paid over to or benefit a qualifying activity. For example, that a university uses income derived from operating a commercial television station to conduct educational programs does not render the income excludable; the income must have been derived from educational activities. <u>See Iowa State University of Science & Technology v. United States</u>, 500 F.2d 508 (Ct. Cl. 1974).

The second requirement under IRC 115(1) is that income "accrue to" a state or political subdivision. Income "accrues" where the state or subdivision has an unrestricted right to a proportionate share of the income. Rev. Rul. 77-261, 1977-2 C.B. 45. The "accrual requirement" may also be met by less direct means. What is required is a substantial degree of government dominance over the enterprise.

While many organizations that are "instrumentalities" for employment tax purposes (discussed below) will also have income excluded under IRC 115, the two are conceptually distinct. It is therefore conceivable that an "instrumentality" may be subject to income taxation.

<u>Return Requirements</u>. Under Rev. Rul. 78-316, 1978-2 C.B. 304, states and political subdivisions (including their "integral parts") are generally not required to file income tax returns with respect to activities they directly conduct. Separately-organized instrumentalities, however, are subject to the general rule requiring taxable corporations to file returns, regardless of whether they have income or owe tax. Rev. Rul. 77-261, 1977-2 C.B. 45. Specific provisions may require a return even if an entity is an "integral part" of a state or political subdivision. For example, if an entity is an "insurance company" for federal tax purposes, it must file a return even if it is

not otherwise considered a taxable corporation. See Rev. Rul. 83-132, 1983-2 C.B. 270.

### b. Employment Taxes

FICA: Under IRC 3121(b)(7), service in the employ of states, political subdivisions, and their instrumentalities is generally excepted from FICA tax requirements. However, under IRC 3121(u)(2), wages of employees hired after March 31, 1986, are subject to the medicare portion of the FICA tax; and, if the service is covered by an agreement with the Secretary of Health and Human Services, entered into under section 218 of the Social Security Act, to other portions of the tax.

FUTA: Under IRC 3306(c)(7), service in the employ of states, political subdivisions, and their instrumentalities is excepted from FUTA tax requirements.

### c. Excise Taxes

Government entities are exempt from many of the miscellaneous excise and other taxes imposed by the Internal Revenue Code. The class entitled to exemption and procedures for claiming it vary. Excise taxes and exemptions therefrom are explained in detail in Publication 510, Excise Taxes, and Publication 378, Fuel Tax Credits and Refunds.

Since excise taxes are imposed on an event (sale, use, manufacture, etc.), rather than an entity, the exemption provisions often speak in terms of the user of the taxable item. One frequently-employed formulation exempts sales "to" or "for the exclusive use of" a government entity. See, e.g., IRC 4041(g)(2) (sales "for the exclusive use of" states and political subdivisions exempt from special motor fuels tax).

The Service has developed guidelines for determining when sales to or use by an organization that is not itself a governmental unit are exempt because they are "for the exclusive use of" a governmental unit. The organization must either (1) be controlled, directly or indirectly, by a government agency, or (2) perform a traditional governmental function on a non-profit basis. Ordinarily, an organization does not perform a traditional governmental function unless it performs an essential governmental function that governments generally have performed directly and that would have to be carried on by the government if the organization did not exist. "Traditional governmental functions" do not include activities merely because they

could appropriately be carried on by a government if it chose to do so, or that supplement government activities such as social or charitable functions.

Where an organization performs functions which are not traditional governmental functions, as an insubstantial part of its activities, it will be classified overall as performing traditional governmental functions. See, e.g., Rev. Rul. 84-71, 1984-1 C.B. 205 (animal control organization exempt).

Where an exemption provision exempts sales "to" a governmental unit, an instrumentality may not claim exemption. Here, only the governmental unit's direct involvement in the transaction suffices to exempt the transaction, not its indirect use through related entities.

d. Contributions and Grants

Income Tax Deduction. Under IRC 170(c)(1), contributions "to or for the use of" a governmental unit for exclusively public purposes may be deducted, within certain limits, by donors who itemize deductions for federal income tax purposes. Exclusively public purposes includes such purposes as furnishing new facilities to railroads, to enable them to remove inner city facilities, Rev. Rul. 67-446, 1967-2 C.B. 119; constructing a public parking lot, Rev. Rul. 69-90, 1969-1 C.B. 63; and promoting economic development, Rev. Rul. 79-323, 1979-2 C.B. 106. The "exclusively public purposes" requirement thus does not require that the contribution be for "traditional" "governmental" purposes.

The amount of charitable contributions (to governmental units and charitable organizations) that may be deducted for income tax purposes depends in part on the nature of the donee. For individuals, a determining factor is if the donee is a "50% organization" or a "30% organization." Contributions "to" a governmental unit may be deducted to the extent contributions to the governmental unit and other "50% organizations" do not, in the aggregate, exceed 50% of the donor's "contribution base." IRC 170(b)(1)(A). Contributions "for the use of" a governmental unit may be deducted to the extent 30% contributions do not exceed the lesser of (1) 30% of the donor's contribution base, or (2) the amount by which 50% of the base exceeds the amount of 50% deductions allowed. IRC 170(b)(1)(B). (For contributions of capital gain property, the limits are 30% and 20%, IRC 170(b)(1)(C).)

Contributions to organizations acting on behalf of governmental units are treated as "for the use of" governmental units. In Rev. Rul. 79-323, 1979-2 C.B. 106, contributions to an industrial development commission were treated as "for the use

of" related governmental units where the commission was "subject to substantial control by the state and the participating municipalities . . .," thus evidencing "a substantial governmental check on its autonomy." The ruling applied the criteria in Rev. Rul. 57-128, 1957-1 C.B. 31, in making this determination. Thus, the same criteria govern whether an organization is an "instrumentality" for employment tax purposes and whether contributions to it are "for the use of" a governmental unit (rather than "to" a governmental unit).

Since these are "for the use of" contributions, they are subject to lower limits, discussed above. See Rev. Rul. 75-359, 1975-2 C.B. 79, which explains the deduction limits, in the instrumentality context. The donee may be recognized as exempt under IRC 501(c)(3) and classified as a public charity, however. In such a case, the greater limits would apply.

Under IRC 170(b)(2), a corporation may deduct charitable contributions (including contributions to or for the use of governmental units) to the extent they do not exceed 10% of its taxable income, with certain adjustments. The nature of the donee is irrelevant for this purpose.

The requirements for deducting charitable contributions are explained in detail in Publication 526, Charitable Contributions.

Estate and Gift Tax Deductions. Contributions "to or for the use of" governmental units for public purposes are likewise deductible for federal estate, IRC 2055(a)(1), and gift, IRC 2522(a)(1), tax purposes. There is no limit on the amount of contributions that may be deducted.

Private Foundation Grants. Due to misunderstanding about the Chapter 42 restrictions on private foundations, governmental units often have difficulty obtaining foundation grants. This misunderstanding relates to the taxable expenditure provisions and distribution requirements, and may cause governmental units to seek 501(c)(3) exemption unnecessarily.

"Taxable expenditures" subject to tax under IRC 4945(a) include (1) any grant to an organization (unless excepted), unless the foundation exercises "expenditure responsibility," IRC 4945(d)(4), (h); and (2) any expenditure for non-charitable purposes, IRC 4945(d)(5). The distribution requirements compel a foundation to distribute certain amounts for "qualifying distributions," defined in IRC 4942(g) as certain amounts paid to accomplish charitable purposes.

Private foundation grants to governmental units for public or charitable purposes are generally not taxable expenditures, regardless of whether the foundation exercises expenditure responsibility. Under Reg. 53.4945-5(a)(4)(ii), expenditure responsibility is not required for grants for charitable purposes to (1) governmental units; or (2) state colleges and universities subject to the unrelated business income tax under IRC 511(a)(2).

Similarly, grants to governmental units for public purposes are "qualifying distributions," under Reg. 53.4942(a)-3(a); and, if they are for charitable purposes, will not be taxable expenditures, under Reg. 53.4945-6(a). Most grants to governmental units will qualify as being for charitable (as well as public) purposes.

Nevertheless, because of these restrictions, some private foundations require grant applicants to submit a letter from the Service determining them to be exempt under IRC (501(c)(3) and classified as a non-private foundation. Such a letter, or an underlying requirement that a grantee be a public charity, is not legally required to be relieved from the restrictions described above, when the prospective grantee is a governmental unit and the grant is for qualifying (public or charitable) purposes.

Rulings may be requested on this issue, either by private foundations desiring to make grants to governmental units or by governmental units seeking grants. Such rulings should be addressed to the National Office.

e. <u>Miscellaneous Taxation Issues</u>

In all, 161 sections of the Code apply special rules to "governmental units," "political subdivisions," or their "instrumentalities." These include the tax-exempt bond financing provisions, under which the bond issuer must be a state or political subdivision, IRC 103(c); a prohibition on claiming the general business credit on property used by states, political subdivisions, or their instrumentalities, IRC (48)(a)(5)(A)(i); exemption of "governmental plans" from many requirements applied generally to qualified employee plans, see IRC 414(d); tax-sheltered annuity provisions, which apply to employees of public schools, see IRC 403(b)(1)(A)(ii); and exemption from many of the liquor and firearms taxes enforced by the Bureau of Alcohol, Tobacco, and Firearms.

Thus, the tax environment in which government entities exist is complex.

f. <u>Rulings</u>

Except for the Chapter 42 provisions, the Code provisions, definitions, and theories discussed in Parts 2 and 3 of this chapter are within the rulings jurisdiction of Associate Chief Counsel (Technical).

Organizations desiring rulings under these sections should address their requests to that office, following the procedures in Rev. Proc. 89-1, 1989-1 I.R.B. 8. User fee requirements, Rev. Proc. 89-4, 1989-3 I.R.B. 18, apply.

## 4. Government Entities' Exemption under IRC 501(c)

### a. Reasons Government Entities Seek Exemption

Even though their income may be otherwise excluded or exempt from tax, many government instrumentalities seek exemption under section 501(c)(3). They express a variety of reasons for doing so:

Deductibility of contributions: 501(c)(3) organizations may receive contributions deductible by the donors for federal income, gift, and estate tax purposes. Although contributions to government entities may be deductible, as discussed pp. 98 - 99, above, some entities feel 501(c)(3) exemption makes it easier to attract contributions. Also, 501(c)(3) organizations are included in Publication 78, Cumulative List of Organizations described in Section 170(c) of the Internal Revenue Code of 1986, giving donors advance assurance their contributions will be deductible. This is a benefit some entities desire.

United Way/Combined Federal Campaign: Some entities feel 501(c)(3) exemption facilitates inclusion in United Way, Combined Federal Campaign, and other federated fundraising drives.

Preferential postal rates: The U.S. Postal Service offers preferential second or third class mailing rates to "charitable, educational, religious, labor" and other qualified organizations, pursuant to 39 U.S.C. Sections 4355(a) and 4452(d). Although 501(c)(3) exemption is not legally required to obtain these rates, some entities find having a determination letter is the easiest way to qualify.

403(b) annuity programs: Only those employees of government entities who perform services for schools (not recognized under IRC 501(c)(3))

may participate in tax-sheltered annuity programs, under IRC 403(b). All 501(c)(3) organization may establish such programs for their employees.

State and local tax exemptions: Many state and local governments provide exemptions from sales, property, and other taxes for qualifying organizations, such as charitable, educational, and similar entities. Although 501(c)(3) exemption is not always required to qualify for these exemptions, some entities find having a determination letter is the easiest way to qualify. (Entities often contact the Service seeking a "tax I.D. number." Absent an indication that 501(c)(3) exemption is in fact desired or needed, such entities should be directed to appropriate local government agencies.)

Federal surplus property donations: 501(c)(3) organizations may be eligible to receive donations of federal surplus property, under 40 U.S.C. Section 484(j), and 41 C.F.R. Sections 101-44.200 et seq. Although public agencies are also eligible donees, some entities again find having a 501(c)(3) exemption letter is the easiest way to qualify.

Interest-bearing bank accounts: Banks frequently require proof of exemption from entities maintaining interest-bearing bank accounts, apparently to avoid information return requirements imposed by IRC 6049.

To obtain 501(c)(3) exemption, government entities must satisfy criteria to ensure they are not integral parts of states or political subdivisions, as explained below. In addition, government entities are subject to all provisions of the law that apply generally to 501(c)(3) organizations, unless otherwise excepted. Thus, they must file information returns and are subject to the unrelated business income tax. There are thus disadvantages to 501(c)(3) status that must be carefully considered, in light of alternatives that may be available to government entities.

b. Standards for Exemption

Section 501(c)(3) exempts organizations; it does not exempt states and political subdivisions (or their "integral parts").

Under Rev. Rul. 55-319, 1955-1 C.B. 119, a wholly-owned government instrumentality may qualify for exemption, however, if it is a counterpart of a 501(c)(3) organization, i.e., if it is "organized and operated exclusively" for permitted

purposes (emphasis supplied). To qualify, the instrumentality must be organized separately from the state or subdivision, and must not have powers indicating purposes that are not exclusively charitable, educational, etc. Rev. Rul. 60-384, 1960-2 C.B. 172. Although these revenue rulings are written in the context of 501(c)(3) organizations, the same criteria applied under other subsections of 501.

Separate organization requirement: The separate organization requirement is generally met if the entity is incorporated under state non-profit corporation law. A trust is also a separate organization. Any entity that is a "corporation" for federal tax law purposes will be considered separately organized, however, even if not incorporated under state law.

What constitutes a "corporation" for this purpose was considered in G.C.M. 34257 (Jan. 23, 1970) and G.C.M. 34502 (May 21, 1971). These G.C.M.'s adapt the definition of "corporation" in IRC 7701(a)(3) and Reg. 301.7701-2(a) to non-profit organizations.

Thus, as applied to non-profit organizations, federal tax law provides that a corporation has the following six characteristics: associates; an objective of the participants to carry on the activity for which the organization was formed; continuity of life; centralized management; limited liability; and free transferability of interests. In determining if an organization is a corporation, the Service considers these and other relevant factors; the organization will be classified as a corporation (and satisfy the "separate organization" requirement) if it more nearly resembles a corporation than some other type of entity.

This definition allows a very broad category of non-profit entities to be considered "corporations" for federal tax purposes, and hence "separately organized" under Rev. Rul. 60-384. Examples of entities that may be considered "separately organized" include colleges and universities; hospital, housing, or development authorities; public library boards; water or park districts; public school athletic associations; charitable trusts; and organizations created by inter-governmental agreement.

No governmental powers requirement. Under Rev. Rul. 60-384, a government entity will not qualify for exemption if it has powers beyond the scope of section 501(c)(3). For example, where an instrumentality exercises substantial enforcement or regulatory powers in the public interest (such as health, welfare, or safety regulation), it will not qualify. Possessing certain limited powers is not disqualifying,

however, provided it does not indicate purposes beyond those qualifying as "exclusively" exempt under section 501(c)(3).

Thus, that an entity is classified as a political subdivision does not necessarily preclude its exemption under IRC 501(c)(3). For example, many state universities have received rulings that they are political subdivisions (despite Rev. Rul. 77-165, discussed above, p. 92), but lack substantial governmental powers. In most cases, however, powers qualifying an entity as a political subdivision will exceed what is permitted by Rev. Rul. 60-384.

**Example (1)**: U is a public hospital corporation organized under a statute giving it power to acquire by eminent domain property essential to its purposes. Because its eminent domain power is limited to acquiring property for its charitable purpose, and such a limited power is commonly bestowed on non-governmental entities, U qualifies for exemption under section 501(c)(3). Rev. Rul. 67-290, 1967-2 C.B. 183.

**Example (2)**: V, a state university, has a police force to regulate traffic, motor vehicles, and speed limits on campus and to issue citations, impose fines, and arrest persons to detain them until city police arrive. Because V's police powers are not substantial and are limited to its campus, they do not disqualify it from exemption under section 501(c)(3). See Rev. Rul. 77-165, 1977-1 C.B. 21. Although this ruling involves qualification as a political subdivision under IRC 103, and does not address 501(c)(3) exemption, in most cases organizations not having "substantial sovereign powers" in the IRC 103 context also lack "powers other than those described in section 501(c)(3)" under Rev. Rul. 60-384.

**Example (3)**: W is a public library board organized under a state statute authorizing it to determine the tax rate needed to support its operations within specific maximum and minimum rates. W does not impose or levy taxes, but submits the tax rate to the county auditor who certifies it to the county adjustment board. The library tax is collected in the same manner as other taxes by the county treasurer, who transmits to the library board its share of tax revenues. Since W does not itself have the power to levy taxes, but only to determine tax rates, it does not have a prohibited governmental power and may qualify for exemption under section 501(c)(3). Rev. Rul. 74-15, 1974-1 C.B. 126.

**Example (4)**: Same as (3), except statute authorizing W's creation gives it the power to levy taxes. The statute provides a mechanism for W to exercise its power: Its board certifies to the county governing body the amount needed, within minimum and maximum limits, which the governing body may not alter. W has the power to tax, a governmental power not described in section 501(c)(3), and does not qualify for exemption.

**Example (5)**: X is a public housing authority incorporated under a statute giving it power to conduct examinations and investigations, take sworn testimony at hearings, issue subpoenas requiring attendance of witnesses or production of books and papers, and issue commissions to examine witnesses not attending hearings. Through these means, it collects information and makes it available to other agencies to use in enforcing planning, building, and zoning ordinances. X does not qualify for exemption because its investigatory powers are beyond those permitted under section 501(c)(3). Rev. Rul. 74-14, 1974-1 C.B. 125.

**Example (6)**: Y is an organization of veterinarians. Pursuant to state law, any veterinarian may be deputized to help county rabies inspectors enforce state laws requiring inoculation of animals against rabies. Deputized veterinarians may issue summons, charge fees, and levy fines, to enforce the laws. Y's members have all been deputized; it assists them in carrying out their responsibilities. Although the powers thus exercised are substantial enforcement and regulatory powers, Y's members have the powers, not the organization itself. Therefore, Y may qualify for exemption.

**Example (7)**: Z is a separately-organized government hospital. Like other hospitals, Z may detain persons involuntarily committed to its care by court order. Z merely carries out lawful orders of others, and does not itself possess the power to order detention. Therefore, Z may qualify for exemption.

c. <u>Organizational Test Problems</u>

Government entities frequently are organized by means other than incorporation under state non-profit corporation law. This fact, combined with the expansive definition of "organization" applied under Rev. Rul. 60-384, means it is often difficult to identify an entity's "articles of organization," Reg. 1.501(c)(3)-

1(b)(2), much less determine their compliance with the organizational tests in the regulations.

Few government entities have organizing documents incorporating standard dissolution clauses, or "exclusive purposes" or "exclusive activities" language. Such entities may find it difficult to secure amendments to their organizing documents as where, for example, they were created by statute. In most cases, it is clear the entities will operate exclusively for charitable purposes, and, if they dissolve, their assets will be returned to the governmental units that created them.

These factors must be kept in mind, in applying the organizational tests in Reg. 1.501(c)(3)-1(b) to government entities.

### d. Private Foundation Classification

Under IRC 509(a)(1) and 170(b)(1)(A)(v), governmental units are not private foundations. As discussed above, however, most governmental units will have sovereign powers disqualifying them from 501(c)(3) exemption, under Rev. Rul. 60-384. Moreover, rulings under IRC 170(b)(1)(A)(v) must be referred to Associate Chief Counsel (Technical), since they are not within EO jurisdiction.

Most government entities that qualify for exemption under IRC 501(c)(3) qualify for non-private foundation status under another classification, however. Most will qualify either as publicly supported organizations under IRC 509(a)(1) and 170(b)(1)(A)(vi) (or IRC 509(a)(2)), or as supporting organizations of governmental units, under IRC 509(a)(3). It is the practice of the National Office to offer these alternatives to organizations that request classification under IRC 509(a)(1) and 170(b)(1)(A)(v).

Where 509(a)(3) classification is requested and the supported organization is patently a governmental unit, the 509(a)(3) ruling may be issued. Where there is some doubt on this point, however, the National Office may seek technical assistance from Associate Chief Counsel (Technical).

### e. Late Filers - IRC 508 Problems

Applications for 501(c)(3) exemption from government entities frequently involve "late filers," i.e., organizations not filing within the 15-month period set by Reg. 1.508-(a)(2). This is usually caused by the fact that government entities do not

seek exemption until they discover the need for it, which may occur many years after their creation.

No exception to the notice requirement applies specifically to government entities.

### f. Unrelated Business Income Tax

Under IRC 511(a)(2)(B), the tax on unrelated business income applies to state and municipal colleges and universities, even though they are not exempt under IRC 501(a), and even though their "related" income is exempt or excluded under IRC 115 or because they are "integral parts" of states or political subdivisions.

Colleges and universities subject to UBIT under IRC 511(a)(2)(B) are those that are (1) agencies or instrumentalities of any government or political subdivision of a government, or (2) owned or operated by a government or political subdivision. Due to the nature of the activities generating it, unrelated business income of entities subject to tax under IRC 511(a)(2)(B) will not be derived from the exercise of an "essential governmental function," and hence not excluded under IRC 115. Nor will taxation be precluded by the doctrine of intergovernmental tax immunity, see Iowa State University of Science & Technology v. United States, 500 F.2d 508 (Ct. Cl. 1974). See G.C.M. 37657 (Aug. 31, 1978).

### g. Reporting Requirements - Exception for "IRC 115 Organizations"

Under Reg. 1.6033-2(g)(1)(v), organizations whose income is excluded under IRC 115 are excepted from the annual return requirements imposed generally. To qualify, all of an organization's income must be excluded under IRC 115. Where another Code section (e.g., IRC 501(c)(3)) also excludes or exempts income excluded under IRC 115, the organization still qualifies for the exception. G.C.M. 37657 (Aug. 31, 1978) concluded, however, that where an organization has any unrelated business taxable income, it does not qualify, even where that income is within a UBIT exception (e.g., "convenience" income under IRC 513(a)(2)). Similarly, where income is not subject to tax because the entity is a governmental unit (and not because the income is excluded by IRC 115), the exception does not apply.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1990 UPDATE

Editor's Note: In late 1990 the IRS updated each topic that came out in early 1990 in its Exempt Organizations Continuing Professional EducationTechnical Instruction Program textbook for 1990. As a result, what you have already read contains the topic as it was set forth in early 1990; what you are about to read is the 1990 update to that topic. We believe combining each text topic with its update will both improve and speed your research.

## E. INSTRUMENTALITIES

This text will update the article on Instrumentalities in the 1990 CPE Text. (References are to the sections and pages of the 1990 text.)

3. <u>Taxation of Government Entities - In General</u>

<u>Exclusion under IRC 115 (p. 95)</u>: The Associate Chief Counsel (Financial Institutions & Products) which has jurisdiction over rulings under IRC 115, takes the position that for that section's "accrual" requirement to be met, an organization's assets must be distributable to a qualifying governmental unit upon dissolution. Accordingly, Exempt Organizations specialists should take care that, in securing amendments to satisfy the "dedication of assets" requirement in Reg. 1.501(c)(3)-1(b)(4), they do not inadvertently require an organization to make amendments causing it not to comply with the requirements under IRC 115.

Since accrual to the United States government does not satisfy IRC 115, many federal instrumentalities may be unable to qualify for that section's exclusion.



Expert

**You have accepted an Answer!**

From PaulMJD

Thursday, December 30, 2010 11:46 AM EST

I am sorry, there are no "federal statutes of IL" there are Illinois state statutes and the format you gave for 60 ILCS 1/85-50 is a proper format, the other two you gave are not in proper form for Illinois statutes nor are they in proper form for any federal statutes.

The ILCS statute is enforced by the Town Board through their town attorney. The matter can be brought to the board by any citizen or law enforcement officer. The statute is:

(60 ILCS 1/85-50)
Sec. 85-50. Demolition, repair, or enclosure of buildings.
(a) The township board of any township may formally request the county board to commence specified proceedings with respect to property located within the township but outside the territory of any municipality as provided in Section 5-1121 of the Counties Code. If the county board declines the request as provided in Section 5-1121 of the Counties Code, the township may exercise its powers under this Section.
(b) The township board of each township may demolish, repair, or enclose or cause the demolition, repair, or enclosure of dangerous and unsafe buildings or uncompleted and abandoned buildings within the territory of the township and may remove or cause the removal of garbage, debris, and other hazardous, noxious, or unhealthy substances or materials from those buildings.
The township board shall apply to the circuit court of the county in which the building is located (i) for an order authorizing action to be taken with respect to a building if the owner or owners of the building, including the lien holders of record, after at least 15 days' written

notice by mail to do so, have failed to commence proceedings to put the building in a safe condition or to demolish it or (ii) for an order requiring the owner or owners of record to demolish, repair, or enclose the building or to remove garbage, debris, and other hazardous, noxious, or unhealthy substances or materials from the building. It is not a defense to the cause of action that the building is boarded up or otherwise enclosed, although the court may order the defendant to have the building boarded up or otherwise enclosed. Where, upon diligent search, the identity or whereabouts of the owner or owners of the building, including the lien holders of record, is not ascertainable, notice mailed to the person or persons in whose name the real estate was last assessed and the posting of the notice upon the premises sought to be demolished or repaired is sufficient notice under this Section.

The hearing upon the application to the circuit court shall be expedited by the court and shall be given precedence over all other suits.

The cost of the demolition, repair, enclosure, or removal incurred by the township, by an intervenor, or by a lien holder of record, including court costs, attorney's fees, and other costs related to the enforcement of this Section, is recoverable from the owner or owners of the real estate or the previous owner or both if the property was transferred during the 15-day notice period and is a lien on the real estate if, within 180 days after the repair, demolition, enclosure, or removal, the township, the lien holder of record, or the intervenor who incurred the cost and expense shall file a notice of lien for the cost and expense incurred in the office of the recorder in the county in which the real estate is located or in the office of the registrar of titles of the county if the real estate affected is registered under the Registered Titles (Torrens) Act. The lien becomes effective at the time of filing.

The notice must consist of a sworn statement setting out (1) a description of the real estate sufficient for its identification, (2) the amount of money representing the cost and expense incurred, and (3) the date or dates when the cost and expense was incurred by the township, the lien holder of record, or the intervenor. Upon payment of the cost and expense by the owner of or persons interested in the property after the notice of lien has been filed, the lien shall be released by the township, the person in whose name the lien has been filed, or the assignee of the lien, and the release may be filed of record as in the case of filing notice of lien. Unless the lien is enforced under subsection (c), the lien may be enforced by foreclosure proceedings as in the case of mortgage foreclosures under Article XV of the Code of Civil Procedure or mechanics' lien foreclosures. An action to foreclose this lien may be commenced at any time after the date of filing of the notice of lien. The costs of foreclosure incurred by the township, including court costs, reasonable attorney's fees, advances to preserve the property, and other costs related to the enforcement of this

subsection, plus statutory interest, are a lien on the real estate and are recoverable by the township from the owner or owners of the real estate.

All liens arising under this subsection (b) shall be assignable. The assignee of the lien shall have the same power to enforce the lien as the assigning party, except that the lien may not be enforced under subsection (c).

(c) In any case where a township has obtained a lien under subsection (b), the township may enforce the lien under this subsection (c) in the same proceeding in which the lien is authorized.

A township desiring to enforce a lien under this subsection (c) shall petition the court to retain jurisdiction for foreclosure proceedings under this subsection. Notice of the petition shall be served, by certified or registered mail, on all persons who were served notice under subsection (b). The court shall conduct a hearing on the petition not less than 15 days after the notice is served. If the court determines that the requirements of this subsection (c) have been satisfied, it shall grant the petition and retain jurisdiction over the matter until the foreclosure proceeding is completed. The costs of foreclosure incurred by the township, including court costs, reasonable attorneys' fees, advances to preserve the property, and other costs related to the enforcement of this subsection, plus statutory interest, are a lien on the real estate and are recoverable by the township from the owner or owners of the real estate. If the court denies the petition, the township may enforce the lien in a separate action as provided in subsection (b).

All persons designated in Section 15-1501 of the Code of Civil Procedure as necessary parties in a mortgage foreclosure action shall be joined as parties before issuance of an order of foreclosure. Persons designated in Section 15-1501 of the Code of Civil Procedure as permissible parties may also be joined as parties in the action.

The provisions of Article XV of the Code of Civil Procedure applicable to mortgage foreclosures shall apply to the foreclosure of a lien under this subsection (c), except to the extent that those provisions are inconsistent with this subsection. For purposes of foreclosures of liens under this subsection, however, the redemption period described in subsection (c) of Section 15-1603 of the Code of Civil Procedure shall end 60 days after the date of entry of the order of foreclosure.

(d) In addition to any other remedy provided by law, the township board of any township may petition the circuit court to have property declared abandoned under this subsection (d) if:

(1) the property has been tax delinquent for 2 or

more years or bills for water service for the property have been outstanding for 2 or more years;

(2) the property is unoccupied by persons legally in
possession; and

(3) the property contains a dangerous or unsafe
building.

All persons having an interest of record in the property, including tax purchasers and beneficial owners of any Illinois land trust having title to the property, shall be named as defendants in the petition and shall be served with process. In addition, service shall be had under Section 2-206 of the Code of Civil Procedure as in other cases affecting property.

The township, however, may proceed under this subsection in a proceeding brought under subsection (b). Notice of the petition shall be served by certified or registered mail on all persons who were served notice under subsection (b).

If the township proves that the conditions described in this subsection exist and the owner of record of the property does not enter an appearance in the action, or, if title to the property is held by an Illinois land trust, if neither the owner of record nor the owner of the beneficial interest of the trust enters an appearance, the court shall declare the property abandoned.

If that determination is made, notice shall be sent by certified or registered mail to all persons having an interest of record in the property, including tax purchasers and beneficial owners of any Illinois land trust having title to the property, stating that title to the property will be transferred to the township unless, within 30 days of the notice, the owner of record enters an appearance in the action, or unless any other person having an interest in the property files with the court a request to demolish the dangerous or unsafe building or to put the building in safe condition.

If the owner of record enters an appearance in the action within the 30-day period, the court shall vacate its order declaring the property abandoned. In that case, the township may amend its complaint in order to initiate proceedings under subsection (b).

If a request to demolish or repair the building is filed within the 30-day period, the court shall grant permission to the requesting party to demolish the building within 30 days or to restore the building to safe condition within 60 days after the request is granted. An extension of that period for up to 60 additional days may be given for good cause. If more than one person with an interest in the property files a timely request, preference shall be given to the person with the lien or other interest of the highest priority.

If the requesting party proves to the court that the building has been demolished or put in a safe condition within the period of time granted by the court, the court shall issue a quitclaim judicial deed for the property to the requesting party, conveying only the interest of the owner of record, upon proof of payment to the township of all costs incurred by the township in connection with the action, including but not limited to court costs, attorney's fees, administrative costs, the costs, if any, associated with

building enclosure or removal, and receiver's certificates. The interest in the property so conveyed shall be subject to all liens and encumbrances on the property. In addition, if the interest is conveyed to a person holding a certificate of purchase for the property under the Property Tax Code, the conveyance shall be subject to the rights of redemption of all persons entitled to redeem under that Act, including the original owner of record.

If no person with an interest in the property files a timely request or if the requesting party fails to demolish the building or put the building in safe condition within the time specified by the court, the township may petition the court to issue a judicial deed for the property to the county. A conveyance by judicial deed shall operate to extinguish all existing ownership interests in, liens on, and other interest in the property, including tax liens.

(Source: P.A. 94-841, eff. 6-7-06; 95-331, eff. 8-21-07

As far as the two 708 statutes, those are not in any proper format as indicated above.

---

I hope you found my answer helpful, please click on the **GREEN ACCEPT** button above for my answer (**EVEN IF YOU ARE A SUBSCRIPTION MEMBER**). This is necessary for me to be paid for my work and so that I can get credit for assisting you. Your question will not close, and you will still have the opportunity to follow-up if needed. Leaving a bonus and positive feedback is not required, but doing so is certainly appreciated!

*Please remember this is a dialog if you have follow up questions **please use the REPLY button** and ask. If you have additional questions, please keep in mind that I do not know what you already know or don't know, or with what you need help, unless you tell me. Please consider that I am answering the question or question that is posed in your posting based upon my reading of your post and sometimes misunderstandings can occur. If I did not answer the question you thought you were asking, please respond with the specific question you wanted answered.*

*Also remember, sometimes the law does not support what we want it to support, but that is not the fault of the person answering the question, so please be courteous.*

*There can also be a delay of an hour or more in between my answers because I may be helping other customers or taking a break.*

**PLEASE NOTE WELL: IF YOU CLICK *OPT OUT* I CANNOT REPLY TO YOUR FOLLOW UP QUESTIONS AND YOU MAY NEVER GET ANY REPLY OR IT WILL DELAY MY ABILITY TO REPLY TO YOU. Also, if you use *RELIST*, I MAY NOT SEE YOUR RESPONSE AND IT WILL DELAY YOUR REPLY.**

You can always request me through my profile at http://www.justanswer.com/profile.aspx?PF=10285032&FID=39 or beginning your question with "For PaulMJD…"

**YOU CAN ALSO GO TO** http://www.justanswer.com/lp/19qy-PaulMJD and request me.

<u>CERTIFICATE OF SERVICE</u>

I, John Hemphill, Pro Se defendant, do hereby certify under penalty of perjury that I served the above DEFENDANT'S AMENDED POSITION PAPER AS TO THE PRE-SENTENCE REPORT on the below listed parties pursuant to Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, and L.R. 5.5 of the United States District Court for the Northern District of Illinois, Eastern Division by placing said documents in a first class postage prepaid envelope and depositing it in the LEGAL MAIL system at the Metropolitan Correctional Center on the 17th day of January, 2011.

(Pro Se)
John Hemphill 22826-424
Metropolitan Correctional Center
71 W. Van Buren St.
Chicago, Illinois 60605


A.U.S.A Matthew Madden
U.S. Attorney's Office
219 S. Dearborn St. - 5th Floor
Chicago, Illinois 60604

Gary Ravitz
Ravitz & Palles, P.C.
203 N. LaSalle - Suite 2100
Chicago, Illinois 60601